ALEXANDER AYOTT *v.* ASAHEL SMITH, *Appellant*, DANIEL FRANCIS, *Trustee*, JOSEPH F. MORSE, *Claimant*.

### *Trustee Process. Promissory Note. Notice.*

In order to determine in any particular class of cases whether notice to one is equivalent to notice to all of several joint and several contractors, it is necessary to look for the reason of requiring notice and the purpose to be answered by it.

The reason for requiring notice of the transfer of negotiable paper to protect such paper from trustee process, is to prevent fraudulent transfers; and transfers after the attachment under pretense that they were made before.

Notice to one joint and several maker of a promissory note where there are two or more, is such notice to all as satisfies the statute, (Gen. Stat. ch. 34, § 47,) and protects the debt from attachment by trustee process when in the hands of a *bona fide* assignee, for value.

THIS was an action of debt on judgment, in favor of the plaintiff against the principal defendant, and was originally commenced before a justice of the peace, and, in the same action, Daniel Francis was summoned as the trustee of the principal defendant. On the trial before the said justice, Joseph F. Morse appeared as claimant of the goods, effects and credits of the principal defendant in the hands of the trustee, and was admitted as a party to the suit so far as it respected his title to the said goods, effects and credits. The action came to the county court on the appeal of the principal defendant, and also of the claimant from the judgment rendered by the justice therein. On the entry of the action in the county court, the claimant filed his allegations in writing, setting forth his claim to the said

Ayott *v.* Smith et al.

goods, effects and credits.   A commissioner was thereupon appointed
to take the disclosure of the trustee, and hear and examine such tes-
timony as the parties should introduce in respect to the liability of
the trustee, or the right of the claimant, and to determine all ques-
tions arising in respect to such liability or right, and to report to the
county court the facts in respect to such liability or right, with his,
(the commissioner's,) decision thereon.   The said commissioner
made his report.   A stipulation in writing, signed by the attorneys
for the plaintiff and the claimant respectively, was filed in court.
The cause was heard and tried by the court, at the September Term,
1865, KELLOGG, J., presiding.

On the said hearing, judgment was rendered in favor of the plain-
tiff against the principal defendant, and to this judgment no excep-
tions were taken.   On the report of the commissioner, and the said
stipulation or agreement in writing, and the claimant's allegations,
the court decided that the trustee was chargeable as the trustee of
the principal defendant on account of the promissory note executed
by the trustee and the plaintiff to the principal defendant, referred to
in the report, to the amount of the note, with the accrued interest
thereon, and that the amount for which the trustee was so decided to
be chargeable, should be paid by the trustee on the said judgment
against the principal defendant in this action, and that the claim of
the claimant to the said promissory note was subordinate to the trus-
tee process in this action, and as against the trustee process could not
be sustained, and that the plaintiff should recover against the claim-
ant, the legally taxable costs by him, the plaintiff, expended in and
about the said action, in consequence of the said claim of the claim-
ant, and rendered judgment accordingly.   From the admitted facts
that the note was dated in Vermont, and that all of the parties to it
resided in this state at the time when the same was executed, the
court, in making the said decision, found, as an inference of fact,
that it was expected and intended by all of the parties to the note, at
the time when the same was executed, that the performance of the
contract contained in the same should be in this state.   To the said
decision and judgment, including the said finding, the claimant
excepted.

Ayott *v.* Smith et al.

### REPORT OF COMMISSIONER.

" The note, a copy of which is hereto attached, is the evidence of indebtedness upon which it is claimed the trustee is chargeable :

'WELLS, VT., March 2d, 1863.

On or before the 10th day of April, 1863, we severally and jointly promise to pay Asahel Smith, or bearer, ninety-three dollars and sixty cents, value received, with use.

DANIEL FRANCIS.
ALEX. AYOTT.'

The plaintiff and the trustee are the signers of the note above referred to.  The said Ayott was indebted to Asahel Smith, the payee in said note, and Daniel Francis, the other signer of the said note, was indebted to said Ayott, and to settle the indebtedness between all the parties, the note in question was given.

The note was executed and delivered at Granville, in the state of New York, at which place also all the arrangements relative to the giving the same, and the settlement between said Ayott, Francis and Smith was made.  The said Asahel Smith was indebted to Joseph F. Morse, the claimant in said suit, and the said Smith transferred and delivered said note to said Morse as collateral security for such indebtedness, and the said Morse, on the 13th day of March, 1863, immediately after such transfer, wrote to each of the signers of said note, and deposited said letters, in the post office at East Poultney, directed to their post office address, which said letters contained a notice of the transfer of the note to him as security for his claims against said Smith.  The notice to Francis, the trustee, was not actually received by him previous to the service of the trustee process in this cause upon him, but the notice by letter to Ayott, the plaintiff, and co-signer of the said note, was received by him prior to the service of the process upon Francis.

If, from the foregoing facts which I find from the disclosure and evidence herewith returned as a part of the report, the court shall consider that the said trustee is chargeable, then I find that he is trustee for the sum of ninety-three dollars and sixty cents, (93.60,) with interest from the second day of March, 1863 ; otherwise, I find that the said Daniel Francis is not trustee, and that said note is the property of Joseph F. Morse, the claimant.   All which is respectfully submitted."

*E. Edgerton, James S. Harris* and *B. Frisbie,* for the claimant and the defendant.

*C. C. Dewey,* for the plaintiff and the trustee.

The opinion of the court was delivered by

PECK, J. The principal question is, whether one of two joint and several makers of a promissory note payable to the principal debtor, or bearer, can be held as trustee of the payee, when the note was, *bona fide*, negotiated to the claimant for a valuable consideration, and notice thereof given, by the claimant, to the other maker of the note, (but not to the trustee,) before the commencement of the trustee process, the suit having been commenced before the note became payable.

Previous to the statute of 1841, subjecting negotiable paper to trustee process, which is still in force, (Gen. Stat., ch. 34, § 47, p. 312,) a negotiable note, while current, was not liable to trustee process, whether it had been negotiated or not before the commencement of the trustee action. In *Hinsdill* v. *Safford et al., Trustees of Whiton*, 11 Vt. 309, the note had been negotiated while current before the commencement of the suit, but no notice of the transfer had been given to the maker till after the service of the trustee process, and it was held that the maker was not liable as trustee of the payee. In *Little* v. *Hale, Trustee of Carlton*, 11 Vt. 482, the note was negotiable while current, but not till after the service of the trustee process, yet the court decided that the trustee was not chargeable. Upon the same principle, in *Hutchins* v. *Evans, Trustee of Lyman*, 13 Vt. 541, where the note had not been negotiated at all, but remained in the possession of the payee, still current, it was decided that the maker was not liable as trustee of the payee. This was upon the ground, that if the trustee was adjudged liable, it would leave the payee with power by subsequently transferring the note, while still current, either to defraud an innocent purchaser, or subject the trustee to a second payment of the note. But in case of notes remaining in the hands of the payee till over due, it was held that they might be attached and held by trustee process, unless they had been transferred, and notice of the transfer given to the promissor before the service of the trustee process on the alleged trustee. As the note in question in this suit was negotiated to the claimant while current, and before the trustee suit was commenced, the trustee, even in the absence of notice, to either maker, cannot be held liable except by

force of the statute subjecting such notes to trustee process. The statute is substantially the statute of 1841, and provides that, "all negotiable paper, whether under or over due, may be attached by, and the same is subject to the operation of the trustee process, unless it shall appear that the same had been negotiated, and notice thereof given to the maker or indorser before the service of the trustee process on him," &c.

The question then arises, whether notice to one joint and several maker, where there are two or more, is notice to all; or more properly, whether notice to one satisfies the statute in this respect, and protects the debt from attachment when in the hands of a *bona fide* assignee for value, or whether it requires notice to both. The language of the statute is susceptible of either construction. If the trustee and his co-maker were partners, and had signed the note in that capacity, no doubt notice to one would be sufficient. It is claimed on the part of the defense, that it is a general rule that notice to one joint contractor, whether partners or not, is notice to all. We are referred to cases in which it has been decided that a demand of payment on one of two or more joint and several makers, of a note, is a sufficient demand to charge the indorsers. Among the cases cited is *Harris* v. *Clarke et al.*, 10 Ohio 5, in which it is so held. On the other side, the case *Union Bank of Weymouth and Braintree* v. *Willis*, 8 Met. 504, is referred to as holding the contrary doctrine. Some very good reasons are assigned for both of those conclusions; but which is the better doctrine as applicable to that subject we need not decide. The general current of authorities seems to be, that in case of joint indorsers, not partners, notice of demand and non payment must be given to all the indorsers, in order to hold all. The reason is stronger in favor of requiring notice to each indorser, as the object of the notice is to enable the indorsers to take up the paper, and secure themselves by proceeding against those primarily liable. But these cases are not decisive of the question involved in this case. No general rule can be laid down applicable to all cases, as to whether notice to one joint contractor, or joint and several promissor, is equivalent to notice to all. It depends on the purpose of the notice, and the object to be accomplished by it. For some purposes notice to one is notice

to both, in the absence of fraud; as, where two jointly make a purchase, one of whom has notice or previous knowledge of a defect in the property, or other fact, which otherwise it would be the duty of the seller to communicate, such notice to, or knowledge of one, is notice to both, as in *Lyman et als.* v. *The Bank of United States*, 12 How. 225. But to determine in any particular class of cases, whether notice to one is equivalent to notice to all, it is necessary to look for the reason of requiring notice, and the purpose to be answered by it. It is obvious that by the statute subjecting current negotiable paper to trustee process, and in requiring notice of the transfer in order to have such transfer prevail over an attachment, it was intended to put it on the same ground in this respect, as the court had previously put negotiable paper that was over due before the transfer of it, and required notice for the same reason and purpose which led the court to require notice in case of the assignment of over due negotiable paper subject to trustee process. That reason could not have been to perfect the title of the endorsee as between him and the endorser, for that is perfected by the endorsement and delivery; nor could it be to perfect the title or right of action in the endorsee against the maker, for they are perfect and complete without notice, so that even a payment by the maker to the payee after the transfer without notice of such transfer, would be no defense against the endorsee. By the law merchant, on such transfer, the maker is no longer the debtor of the payee or former holder, but becomes *instanter* without notice, the debtor of the endorsee, and he must at his peril take notice who the holder is. The ground then for requiring notice of the transfer to protect such paper from trustee process, is to prevent fraudulent transfers; and transfers after the attachment under pretense that they were made before. It is upon the same principle that the purchaser of personal property is required to take possession; or if the property is in possession of a third person, at least to give notice to him of the transfer of title and obtain his consent to hold it in behalf of such purchaser. That is, in both cases, in order to prevent fraudulent sales of property or choses in action, the purchaser is required to do an act of ownership, before the attachment; in the

one case, to follow up his purchase by giving notice, and in the other by taking possession. In Massachusetts by a series of decisions it is held that no notice is necessary in such case to prevent an attachment of such debt by trustee process; and upon the ground that nothing is left after such assignment which equitably and legally belongs to the principal debtor. It is only upon the ground of policy to prevent fraud that in this State notice is held necessary. In *Britton* v. *Preston, Trustee of Langley*, in which it was held that the rule requiring notice only applied to the first transfer, PHELPS, J., speaking of these Massachusetts cases, says, " this doctrine has always appeared to me to be most consonant to principle, although it must be admitted there are considerations of policy which make strongly in favor of a different rule ;" but says also that in this State the rule has been adopted that prevails in Connecticut, that if notice to the maker be wanting, the trustee process will hold, notwithstanding the assignment. But he further says that, "*there is no propriety in taking one man's property to pay the debt of another; and nothing reconciles me to the rule adopted in this State except the consideration that it may prevent frauds.*" This shows that the requirement of notice rests merely upon the ground of policy to prevent fraudulent transfers. The question then is, whether this rule of policy is not satisfied by notice to one of the makers, so as to perfect the transfer of the debt as against the attachment by trustee process. It appears that the claimant, soon after the note was transferred to him, made two written notices and sent by mail, one to each of the signers of the note; one received his notice before the commencement of this suit, and the other (this trustee,) did not. This is an act of ownership on the part of the claimant as significant of a transfer of the debt as if both notices had been received before the service of the writ. It ought to be effectual unless prevented by some absolute rule of law. It could hardly be claimed that the signer who received the notice before the commencement of the suit could be held as trustee. If he cannot, it must be on the ground that the debt was put beyond attachment as the property of the payee ; and if so, how can the other signer be held for the same debt. It is the debt and not the trustee that is the subject of attachment. The trustees have

Ayott *v.* Smith et al.

no legal interest in the question whether the debt they owe is held by the process or not; it is indifferent to them to whom they pay. The parties in interest in the question are the attaching creditor and the assignee of the demand. There would seem therefore to be no sound reason in saying that the same debt is attachable in the hands of one of the signers and not in the hands of the other; as the effect is the same as if both can be held as trustees. If one is liable as trustee the other should be also; otherwise one joint and several maker is liable to the assignee, and the other to the attaching creditor, and the one who first collects the debt would thereby extinguish the right of the other, without regard to priority in the commencement of the suits. Personal property may be attached by trustee process while in the possession of a bailee. If, instead of a debt due from the makers of this note, it had been personal property in their joint possession, attached by the ordinary process of attachment, notice to both bailees would not seem to be necessary to perfect the sale as against the attachment. The result must be the same if such personal property were attached, as it may be, by trustee process, as the two cases differ only in the mode of attachment; and no good reason is perceived why notice to one joint debtor, when the debt, instead of tangible property, is attached, should not be equally effectual. We think in view of the reason which led to the adoption of this rule requiring notice, and the purpose intended to be accomplished by it, that the notice given in this case perfected the transfer of the note, and put the debt beyond the reach of attachment as the property of the payee, especially as the plaintiff had notice of the transfer before commencing his suit; and consequently neither debtor can be holden as trustee in respect to it.

There is one peculiar feature of this case not noticed. The plaintiff in this action is co-signer of the note with the alleged trustee, and received a written notice from the claimant of the transfer before he commenced this suit. If the plaintiff has the same legal rights as any other attaching creditor, he certainly has no greater, and having attached the debt with full notice of the transfer, he has far less equity on his side than a creditor attaching in ignorance of any transfer.

The judgment against the trustee and claimant is reversed and judgment that the trustee is not chargeable and that the trustee and claimant recover their costs.